HEMPSTEAD, Plaintiff in Error, v. HEMPSTEAD'S ADMINISTRA-
TOR *et al.*, Defendants in Error.

1. A judgment was recovered against A. and B. on an official bond in which
B. was principal and A. his security. B. died leaving him surviving a
widow and daughter, his only heir. A. was compelled to pay a portion of
the judgment. C., to whom the judgment had been assigned and who had
control over it, in consideration of the compromise and dismissal of various
suits instituted against him by the heir of B., covenanted by instrument
under seal with the said widow and heir never to use or enforce said judg-
ment so far as the same could be made to affect the heirs, executors, or ad-
ministrators of B., or any property owned by them as such heirs, &c., except
as to two specified tracts of land, with respect to which he reserved the
right of using said judgment as he might see fit. He also reserved the
right of using said judgment against A. and his property. Notwithstanding
the execution of this instrument, C. procured the allowance by the probate
court of said judgment as a claim against B.'s estate, and it was classed in
the fourth class of allowed claims. A. procured the allowance in his favor
of a claim against B.'s estate for the amount paid by him in part satisfac-
tion of said judgment; this claim was assigned to the fifth class. *Held*, in
a suit instituted by A. against B.'s administrator and C. for the purpose of
having the allowance of said judgment in C.'s favor set aside and the assets
in the hands of the administrator applied to the payment of A.'s claim, that
the instrument executed by C. operated a release of the judgment as
against B.'s estate; that (the claims of A. and C. being the only allowed
claims) C. was not entitled to have said judgment allowed as a claim against
B.'s estate so as to protect the assets thereof (except the excepted property)
from the payment of the claim of A.; that said instrument operated a like
release of the judgment as to A., he being only a security.

*Error to St. Louis Circuit Court.*

This was an action by Charles S. Hempstead against John D. Wilson, administrator of the estate of Thomas Hempstead, deceased, and John Biddle. The petition set forth that Thomas Hempstead was an officer of the United States government; that plaintiff was the security upon his official bond; that on the 7th of June, 1823, judgment was rendered on said official bond against said Thomas as principal and plaintiff as security, in the district court of the United States for Missouri, for the sum of $13,497.27; that said Thomas Hempstead left the United States and was last heard of in Spain in the year 1827; that plaintiff was compelled by executions to pay money upon said judgment at various times; that the defendant Biddle obtained the control of said judgment with power to release the same; that said Thomas left one child only, a daughter; that said daughter, being the sole heir of said Thomas, in 1845 or 1846 brought suits against said defendant Biddle for the recovery of certain property in the possession of said Biddle, which she claimed as descending to her from her father, the said Thomas; that as a part consideration for the withdrawal of said suits the said Biddle released the said judgment in favor of the United States and of which he had control so that the same should no longer be a charge upon the estate of the said Thomas; that though said release was executed by the said Biddle and was in the hands of the agent of the said sole heir of said Thomas Hempstead, by a fraudulent contrivance between the said Biddle and the said heir the said release was not entered of record, but the judgment was fraudulently allowed to stand unsatisfied for the purpose of defrauding plaintiff and compelling him to pay the same notwithstanding it had been released; that in the year 1848 the defendant Wilson married the said heir of said Thomas, Cornelia V. Hempstead; that in June, 1850, letters of administration were granted by the probate court of St. Louis county upon the estate of Thomas Hempstead to said Wilson; that in March, 1851, by the con-

nivance of the said Wilson, the said judgment was revived in favor of the United States, to the use of said Biddle, the said Wilson well knowing that the same had been released; that the judgment so revived was presented in the probate court for allowance against the estate of said Thomas; that the probate court refused to allow the same; that an appeal was taken to the circuit court; that by the fraudulent practices and the connivance of the said Wilson and Biddle a decree was obtained in the circuit court that said judgment be allowed by the probate court, though the said Biddle did not intend that any thing should be paid by the said Wilson, administrator; that on the 15th of June, 1852, said judgment, amounting to nearly $40,000, was allowed by the probate court, and placed in the fourth class of claims allowed against the said estate; that at the March term, 1853, of said probate court, a claim was allowed in favor of plaintiff against the estate of said Thomas, amounting to $10,244.67, for moneys paid on the aforesaid judgment; that said claim was placed in the fifth class of claims; that no other claims than the aforesaid have been allowed against the said estate; that property to a large amount belonging to the estate of said Thomas Hempstead has come into the hands of said Wilson as administrator; that under the fraudulent pretence of paying said judgment allowed in favor of said Biddle, Wilson obtained an order of the probate court for the sale of property belonging to the estate of said Thomas; that at the December term of said court he sold property and received $7,630, as appears by his report to the court; that at the December term, 1854, he sold other property, said Biddle becoming the purchaser at a price of $3,650; that said Biddle and Wilson, having received notice that plaintiff intended to move the court to have the proceeds of said sale applied to his claim, fraudulently combined to suppress said sale and no report was made of it to the probate court; that at the September term, 1855, of the probate court, the said administrator Wilson sold property amounting to $957, as appears by his report; that nothing has been paid upon said judg-

ment in favor of said Biddle; that it was not intended by
Wilson and Biddle that any thing should be paid upon it;
that said sales were not made for the purpose of paying said
judgment, or any debt of the estate of said Thomas Hemp-
stead, but were made for the purpose of defrauding plaintiff
of his just claim; that said judgment, by a fraudulent com-
bination between Wilson and Biddle, is held as a cover for
the assets of the said estate, and to prevent plaintiff from
obtaining satisfaction of his just claim; that said judgment
is more than sufficient to cover all the assets of the estate;
that by the corrupt and fraudulent practices of the defen-
dants plaintiff is defrauded of his just debt against said
estate; that the probate court refuses to entertain jurisdic-
tion of this cause, to set aside the allowance of said judg-
ment and grant relief to plaintiff. " The plaintiff therefore
prays this court to take cognizance of this case, to set aside
the allowance of said judgment in favor of said Biddle against
the said estate, to cause the assets of said estate to be equit-
ably applied to the payment of plaintiff's claim, and for such
other and further relief," &c.

Defendants answered separately, denying any release of the
judgment mentioned in the petition, and denying the fraud
alleged.

At the trial by the court without a jury, the plaintiff offered
in evidence the following instrument in writing: " I, John
Biddle, of Detroit, in the state of Michigan, hereby covenant
and agree with Cornelia Hempstead, widow, and John D.
Wilson and Cornelia V. Wilson his wife—which Cornelia V.
is a child and sole heir of said Thomas Hempstead—in man-
ner following, that is to say: Whereas I am the owner and
assignee of a certain judgment rendered in the United States
district court for Missouri, on the 2d day of June, in the year
1823, for the sum of $13,497.27, in favor of the United
States against Thomas and Charles S. Hempstead; I have
compromised a certain suit in chancery this day, wherein
John D. Wilson and wife and Charles Gibson are complain-
ants, and myself, John O'Fallon and others are defendants,

and they have quit-claimed all their right in the lands in controversy in that suit, and agreed to dismiss that suit, and as part of the consideration for such quit-claim and dismissal of said suit and release of their cause of action therein is the release of the estate of said Thomas Hempstead from said judgment as hereinafter specified: Now therefore I hereby, for my heirs, representatives and assigns, agree and covenant that said judgment shall never be used or enforced in any manner against the heirs or administrator of said Thomas Hempstead, unless for the purpose of affecting the two pieces of land of forty arpens and of five arpens hereinafter mentioned, nor against any property belonging to his estate or to his heirs as derived from him at any time, except however the tract of forty arpens lying in the common field of St. Louis, being the same conveyed to Thomas and Charles S. Hempstead by Margaret Hebert *dit* Lecompte by deed dated the 8th day of January, 1818, recorded in book G, page 11, and except also a piece of five arpens, being on the south of said forty arpens tract, and conveyed to William C. Carr by Thomas and Charles S. Hempstead by deed dated the 26th day of August, in the year 1819, recorded in book J, page 165; against which said two pieces of land (the last of which pieces of land I am the owner of, and the eastern portion also of the former I am the owner) I reserve the right of using said judgment as I may see proper, and also of using the names of the heir and representatives of Thomas Hempstead, deceased, for the purpose of selling or otherwise affecting the same lands, but always at the proper costs of myself or my representatives. And I also have the right of using said judgment as I may see proper, and also of using the names of the heir and representatives of Thomas Hempstead, deceased, for the purpose of selling or otherwise affecting the same lands, but always at the proper costs of myself or representatives. And I also have the right of using said judgment against Charles S. Hempstead and his property; but, with the exception of the whole of the said forty arpens and of the said five arpens, I am not to use or enforce

said judgment so far as the same can be made to affect the heirs, executors or administrators of the said Thomas Hempstead, or any property owned by them or any of them as such heirs or executors or administrators. In testimony whereof I have hereto set my hand and seal this 7th day of December, 1849. [Signed] John Biddle. (Seal.)"

The court, at the instance of defendants, excluded said instrument as incompetent. The plaintiff thereupon moved the court to permit an amendment of the petition " so as to meet the proof contained in said paper writing." The court refused to grant the motion; whereupon plaintiff took a nonsuit, with leave, &c.

*Munford, Jones & Sherman,* for plaintiff in error.

I. The court erred in excluding the instrument signed by John Biddle. It was a full and fair release of the judgment as to Hempstead's estate; if not technically, then in spirit and substance. Had it been produced before the probate court, the judgment never would have been allowed. The writing showed a fraudulent combination between defendants to obtain an allowance of the judgment. If the proof contained in said writing did not technically sustain the petition, the court should have allowed plaintiff to amend.

*S. T. & A. D. Glover,* for defendants in error.

I. The instrument offered in evidence was not a release; it was not therefore pertinent to the issue between the parties. It contemplates that the judgment shall for many purposes continue in force; this is irreconcilable with the idea of a release. (See Parker v. Holmes, 4 N. H. 97.) At most it contains an agreement between the widow and heir of Thomas Hempstead to use the judgment in a particular manner; not to extinguish the judgment, but to keep it alive and control it. The widow and heir of Thomas Hempstead only were parties to the contract. The administrator was not, and had no interest in it. A covenant not to sue one co-obligor is no release of the other. (14 Pick. 123; 17

Mass. 581 ; 9 Cow. 37 ; 4 Greenl. 421.)   There is no equity
in plaintiff's bill.   He could obtain all the relief he prays by
proceeding in the probate court.   To obtain the relief sought
the heirs of Thomas Hempstead should be before the court.
The heir of Hempstead might legally cancel said contract or
waive the benefit of it, and no one could complain of it.   It
would be no injury to any one else.   The administrator of
Hempstead had no right to enforce said contract.   Biddle
reserved the right to enforce the judgment as against the two
tracts of forty and five arpens.   He therefore had a right to
have it allowed by the probate court.   The whole judgment
might be exhausted in the sale of T. Hempstead's right and
claim to said tracts.   These tracts were worth three times
the amount of the judgment.   The court properly refused
to allow an amendment of the petition.

Scott, Judge, delivered the opinion of the court.

The question in this case is whether the court below pro-
perly rejected as evidence the release of John Biddle offered
by the plaintiff with a view to show that the defendant Wil-
son, who is the administrator of Thomas Hempstead and the
husband of his heir Cornelia Hempstead, had no right to
keep on foot, to his prejudice, the judgment mentioned in
the release.

The release of the judgment against Thomas Hempstead
by Biddle was with the exception that the judgment might
still be used in the event it should become necessary for the
protection of two parcels of land conveyed to Biddle.   These
parcels were the subject of a suit between Mrs. Wilson, as
the heir of Thomas Hempstead, and John Biddle.   The suit
was compromised by the heir conveying to Biddle the land
she sought to recover from him.   Among other considera-
tions for this compromise, Biddle released the heirs, execu-
tors and administrators of Thomas Hempstead from the judg-
ment which has given rise to this litigation, except so far as
it might be necessary to use it for the protection of the title

to the land which Biddle obtained by his compromise with the heir.

The plaintiff is a creditor of Thomas Hempstead; and Wilson and his wife (the heir of Hempstead) claim that they have a right to keep on foot the released judgment to the exclusion of other creditors until that judgment is ratified, it being a debt of a preferred class. The interest in the land that was passed· away by the compromise of Mrs. Wilson with Biddle was subject to the payment of the debts of Thomas Hempstead. His creditors, by taking the proper steps, may subject the interest owned in the land by Hempstead to the payment of their debts. Mrs. Wilson, as heir, held the land subject to the payment of debts. If she, as heir, aliened the land and by that act obtained a release of the estate from a judgment, why should not a creditor have the benefit of that release, he being willing to abide by the act by means of which it was obtained? If this is not allowed, the creditors may avoid the compromise, and have the land sold which has been aliened away. Thus, by seeking to appropriate the released judgment to her use, and not to the benefit of the estate of her ancestor, she forces a violation of the compromise she has made, although she may have received other considerations for it than the release, thus placing Biddle where he was before the compromise minus the sum he may have paid for it in addition to the release. As the land which Mrs. Wilson aliened was subject to the payment of debts, and as by means of that alienation she has obtained a release of the estate of her ancestor from a judgment, there is no reason why a creditor should not have the benefit of it, as property in which he had an interest has been the means of obtaining it. Independently of the natural equity of the thing, justice to Biddle requires that such should be the construction of the contract, otherwise he is deprived of the sole advantage he sought by his compromise. We are considering this on principle. The record shows that Biddle is hostile to the claim of the plaintiff; that he does not seek the benefit of the construction we have put

upon the contract. But the release is before us. It speaks for itself, and neither the conduct nor declarations of Biddle can vary its interpretation to the prejudice of third persons.

It may be urged that Biddle has purchased the interest of the heir, whatever it may be, and whatever she may have received for it is no concern of the creditor, as he is still free to act as though no alienation of the land had been made, no compromise effected; that there is no privity between the creditors and heir, no relation of trustee and *cestui que trust*, which entitles the creditor to any advantage or profit the heir may make by means of the inheritance. Take it that the intimation thrown out in relation to this case is untenable, yet the fact is the estate of Hempstead has been released from the judgment. Because the heir procured the release, she has no right to regard it as an assignment to herself; there is nothing in the instrument which shows that it should enure to her benefit. On the contrary, such an idea by forcing the creditors to disturb the compromise, brings about the very state of things it was designed to prevent. The paper executed by Biddle is no assignment of his judgment to Mrs. Wilson; with the exception above referred to, it is a clear release. It stipulates that he is not to use or enforce said judgment so far as the same can be made to affect the heirs, executors or administrators of said Thomas Hempstead, or any property owned by them or either of them as such heirs, executors or administrators. The instrument also recites that the release of the estate of Thomas Hempstead, from said judgment is part of the consideration of the compromise. It is obvious that if this paper does not operate as a release it does not operate at all, and that it can not be construed into an assignment of the judgment.

The only difficulty that suggests itself in relation to the views first expressed about the case as to the right of the creditor to adopt the act of the heir arises in the event there are more creditors than one, and they do not unite in the adoption of the compromise. In such case, a portion of them by adopting it could not affect those who are unwilling

to do so. Those not agreeing to the compromise would have a right to sell the land compromised away, and by so doing would destroy the compromise and take away its benefits from those who are willing to abide by it. There is but one creditor in this case as it appears.

As to the attempt by Biddle to hold the judgment as against Charles H. Hempstead, who is a mere surety, it is futile. One joint co-obligor may be relieved from his portion of the obligation. But the release of the principal in an obligation will certainly discharge the surety; otherwise, if the surety is compelled to pay the debt, he will force the principal to reimburse him and thus the effect of the release will be destroyed.

The judgment is reversed and the cause remanded. Judge Napton concurs. Judge Richardson not sitting, having been of counsel.